# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CHARLES D. SHATTUCK-KNAEBEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-CV-212 CAS |
| | ) | |
| JASON LEWIS, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of plaintiff Charles D. Shattuck-Knaebel's amended complaint. For the reasons discussed below, the Court must dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. Id. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Barton v. Taber, 820 F.3d 958, 964 (8th Cir. 2016). See also Brown v. Green Tree

Servicing LLC, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). See also Stone v. Harry, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. See McNeil v. United States, 508 U.S. 106, 113 (1993).

### Background

Plaintiff is currently incarcerated at Potosi Correctional Center in Mineral Point, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. The following individuals are named as defendants: Warden Jason Lewis; Assistant Warden Paula Reed; Functional Unit Manager Bruce Hannebrink; and Classification Case Managers Cliffton Cossey, Joshua Carter, April Samples, Unknown Price, and Unknown Peters. Defendants are sued in both their official and individual capacities.

Plaintiff filed his complaint on August 24, 2018, along with a motion for leave to proceed in forma pauperis, and a motion to appoint counsel. He did not provide a certified inmate account statement, and on August 28, 2018, the Court ordered him to provide one within thirty days. Plaintiff responded to the Court on September 13, 2018, and advised that the Southeast Correctional Center (SECC) was refusing to provide him a copy of his account statement. On September 27, 2018, plaintiff filed a motion for leave to file an amended complaint. Shortly thereafter, he also provided the Court with a copy of his inmate account statement.

On November 26, 2018, the Court granted plaintiff's motion for leave to proceed in forma pauperis and ordered him to pay an initial partial filing fee of $1.50. The Court also granted his motion to amend, and directed him to file an amended complaint on a Court-provided form within thirty days. Plaintiff duly complied with this order and filed his amended complaint on December 26, 2018.

## The Amended Complaint

Plaintiff's amended complaint is handwritten on a Court-provided form, and is sixty-eight pages long. He has integrated numerous exhibits into the complaint, which will be treated as part of the pleading. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). The "Statement of Claim" is divided into eight sections, one section for each defendant.

Defendant Jason Lewis is the Warden of SECC. Doc. 16 at 2. Plaintiff states that on two separate occasions, he sent Warden Lewis "informal offender to staff correspondences," known as "kites." Id. at 6. He alleges that these kites were either ignored by Warden Lewis or handed down to Assistant Warden Paula Reed.

3

In the first kite, plaintiff complains to Warden Lewis that he was denied a copy of his certified inmate account statement, which had been requested by the Court in the instant case. Id. at 6, 11. He also states that he informed Lewis that he was not being allowed to pursue this matter through the grievance process, because he was not being given an informal resolution request (IRR) form. Id. at 16 at 7. He alleges that in ignoring his kite, Warden Lewis ignored the constitutional violations of his subordinates, specifically his right of access to the courts, his First Amendment right of free speech, and his Fourteenth Amendment rights to due process and equal protection.

In the second kite, plaintiff states that he advised Warden Lewis that he was being unjustifiably held in administrative segregation. Id. at 7-8, 12. According to plaintiff, he was told his administrative segregation status was the result of his stepping down from the "security threat group" known as "Family Values." Id. at 9. He states he was also advised that he was being held for his own safety pending transfer. Id. at 8. Plaintiff asserts that he told Warden Lewis he had no listed enemies at SECC, and that he was not allowed to list enemies housed at other correctional facilities. Plaintiff's second kite also stated his belief that the classification unit was retaliating against him for filing the instant case. Id. at 12. He claims that Warden Lewis failed to remedy these problems, thereby condoning the unconstitutional acts of his subordinates. Id. at 8.

Defendant Paula Reed is the Assistant Warden at SECC. Id. at 3. Similar to Warden Lewis, plaintiff asserts that he sent kites to Assistant Warden Reed on two separate occasions. Id. at 13.

In the first kite, plaintiff states that he informed Assistant Warden Reed that his caseworker, Cliffton Cossey, was ignoring his requests to obtain legal work pertaining to a pending post-conviction relief claim in Shattuck-Knaebel v. State of Missouri, No. 16MG-

CC00035 (26th Judicial Cir., Morgan County). Due to Cossey's alleged failure to respond to plaintiff's requests, plaintiff claims that he "lost his ability to claim an ambiguity in his sentence" due to missing a filing deadline. Id. at 14. Furthermore, plaintiff asserts that he informed Assistant Warden Reed that Cossey was ignoring his requests for special unit legal request forms, and for status as an indigent offender "so that he wouldn't have to choose between required legal materials and necessary hygiene items." Id. Plaintiff states this also caused him to lose his ability to bring forth a non-frivolous, arguable claim in Shattuck-Knaebel v. State of Missouri, No. 16MG-CC00035.

In the second kite, sent on September 24, 2018, plaintiff again informed Assistant Warden Reed that he had made further attempts to obtain assistance in pursuing his post-conviction case and the instant civil case. This kite stated that his attempts to obtain IRR forms so that he could address his grievance concerns per SECC policy were ignored. Id. at 14-15. Plaintiff asserts that because he brought this to Assistant Warden Reed's attention, she is "just as guilty as her subordinate officers who were the actual, direct offending parties." Id. at 15.

Defendant Bruce Hannebrink is the Functional Unit Manager (FUM) at SECC. Id. at 4. Plaintiff states that his original problem with FUM Hannebrink concerned the delivery of plaintiff's legal mail. Id. at 19. On April 20, 2018, plaintiff received legal mail postmarked April 5, 2018. He claims that this evidences the fact that his legal mail was held for fifteen days. He states that this "was just one event in a series of events that led to plaintiff losing his opportunity to bring forth a nonfrivolous, arguable claim of an ambiguity in his prison sentence." Id. at 19-20. He further states that FUM Hannebrink did not provide a copy of his mail signature receipt, violating his right to due process. Id. at 20. Eventually, plaintiff did receive a response to his

mail-related grievance stating that plaintiff's legal mail was received in the mailroom on April 17, 2018, and delivered to plaintiff on April 20, 2018. <u>Id.</u> at 25.

Plaintiff's other complaint regarding FUM Hannebrink concerns plaintiff's inability to retrieve a copy of his certified inmate account statement, which plaintiff was directed to provide in the instant case. <u>Id.</u> at 18. Plaintiff states that FUM Hannebrink did nothing to remedy this situation. He further states that FUM Hannebrink's failure to respond to his kite was a retaliatory tactic to sabotage the instant case, because Hannebrink had been named as a defendant. <u>Id.</u> at 19.

Defendant Cliffton Cossey is a Classification Case Manager (CCM) at SECC. <u>Id.</u> at 4. Plaintiff states that on December 23, 2017, plaintiff was assigned to administrative segregation for a major conduct violation. <u>Id.</u> at 27. At the time, he had a pending post-conviction action pending in Morgan County Circuit Court, docketed as <u>Shattuck-Knaebel v. State of Missouri</u>, No. 16MG-CC00035. On numerous occasions over a period of three weeks, plaintiff requested approval for a qualified legal claim. This would give plaintiff access to the library and also allow him to purchase extra materials and postage in order to maintain contact with his attorney. Plaintiff states that CCM Casey denied his ability to apply for a qualified legal claim, though he was eventually approved by FUM Lorene Armstrong.

On July 20, 2018, plaintiff states that he was released from administrative segregation. <u>Id.</u> at 28. Shortly thereafter, on July 22, 2018, he was reassigned to administrative segregation after being assaulted by another inmate. Plaintiff claims that he asked the inmate why he had assaulted him, to which the inmate replied that plaintiff "had better stop filing all those complaints against classification." <u>Id.</u> Plaintiff states that he "assumed the other inmate was talking about complaints he had filed against…[CCM] Cossey and…[CCM] Joshua Carter." <u>Id.</u>

During his time in administrative segregation, plaintiff alleges that he sent five kites to CCM Cossey asking for approval for a qualified legal claim; to be provided his legal work from property; to be provided special legal request forms; and for approval to be listed as an indigent offender. These requests were all ignored. Id. at 31. Plaintiff alleges that CCM Cossey also denied his requests for IRR forms to file grievances.

Defendant Joshua Carter is a CCM at SECC. Id. at 4. On or about February 14, 2018, plaintiff states that he moved cells, and that CCM Carter became his caseworker. Id. at 33. On April 20, 2018, plaintiff states that CCM Carter "presented" him with a signature form to confirm the receipt of legal mail from plaintiff's post-conviction counsel. The envelope was marked "legal mail" and was postmarked April 5, 2018. Plaintiff claims that CCM Carter held plaintiff's legal mail for fifteen days before delivery.

Plaintiff's allegedly-withheld legal mail contained correspondence from plaintiff's post-conviction attorney Arthur Allen. Plaintiff states that the letter advised him "that the deadline to raise the claim to his post-conviction relief claim of an ambiguity in his sentence was now expired." Id. at 34. Despite admitting that his ambiguous-sentence claim was already untimely as of the time his attorney wrote the letter, plaintiff asserts that CCM Carter denied him access to the courts, and kept him from being able to timely raise a non-frivolous claim in Shattuck-Knaebel v. State of Missouri, No. 16MG-CC00035.

On April 23, 2018, plaintiff filed an IRR alleging interference with his access to the courts and to his attorney. On June 1, 2018, after expiration of the forty-day deadline for IRR responses, plaintiff requested a grievance form to continue his claims. He alleges that CCM Carter hindered this process, and that he assumes it was because Carter was attempting to avoid being submitted to disciplinary measures.

Plaintiff accuses CCM Carter of causing him to lose the ability to raise a non-frivolous, arguable post-conviction claim by withholding his legal mail. <u>Id.</u> at 35. He also alleges that CCM Carter's refusal to assist plaintiff in attaining indigent offender status and hindrance of the grievance process violated his rights of access to the courts, freedom of speech, and due process.

Defendant April Samples is a CCM at SECC. <u>Id.</u> at 5. Plaintiff states that he wrote seven separate kites to CCM Samples. <u>Id.</u> at 37. In those kites, he "repeatedly" advised CCM Samples that he needed assistance in obtaining legal materials; that he needed a copy of his inmate account statement; that he needed IRR forms; that Samples had legal supplies in her office purchased by plaintiff; that he needed instructions on making photocopies; and that he needed his legal work from the property room in order to work on his pending post-conviction case. <u>Id.</u> at 38, 41-47. Plaintiff asserts that CCM Samples ignored all these kites, violating his rights to freedom of speech, access to the courts, due process, and equal protection. <u>Id.</u> at 37-38.

Defendant Unknown Price is a CCM at SECC. <u>Id.</u> at 5. Plaintiff states that he wrote five kites to CCM Price, making Price aware of substantially the same complaints as those he directed at CCM Samples. <u>Id.</u> at 48. He asserts that his kites advised Price that he had not received a copy of his inmate account statement, and that he had not received IRR forms to file grievances on a variety of concerns, including his transfer to a different facility and his request to be listed as an indigent offender. <u>Id.</u> at 48, 50-54. Plaintiff notes that two of his kites have been annotated in red ink, which he states is corroboration of CCM Price's knowledge of plaintiff's legal situation, and therefore, Price's liability for the alleged denial of his rights to freedom of speech, access to the courts, due process, and equal protection. <u>Id.</u> at 48.

Defendant Unknown Peters is a CCM at SECC. <u>Id.</u> at 5. Similar to CCM Samples and CCM Price, plaintiff asserts that he wrote five kites to CCM Peters. <u>Id.</u> at 55. These kites advised

CCM Peters that plaintiff had not received a copy of his inmate account statement; that he required "special unit legal request forms" so that he could access the law library; and that he required IRR request forms in order to state his concerns regarding his access to the courts, retaliation for filing the instant case, retaliatory transfer, and his inability to pursue the institutional grievance procedure. Id. at 55, 57-61. Plaintiff claims that CCM Peters's refusal to remedy his needs and grievances constituted a violation of his rights to freedom of speech, access to the courts, due process, and equal protection.

With regards to injuries, plaintiff states that he was treated for a laceration and a concussion as a result of the inmate assault. Id. at 62. He also asserts that he has suffered mental distress and anxiety due to staff backlash and "from losing the ability to timely raise a non-frivolous arguable [post-conviction] relief claim." Plaintiff is seeking $25,000 in actual damages and $250,000 in punitive damages. Id. at 63.

## Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, naming eight defendants in both their official and individual capacities. Having thoroughly reviewed and liberally construed the amended complaint, and for the reasons discussed below, the Court must dismiss this action for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B).

### A. Stating a § 1983 Claim

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." Wong v. Minnesota Dep't of Human Servs., 820 F.3d 922, 934 (8th Cir. 2016). Specifically, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." Zutz v. Nelson, 601

F.3d 842, 848 (8th Cir. 2010). A plaintiff bringing a § 1983 action must include in his complaint "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Brooks v. Roy, 776 F.3d 957, 960 (8th Cir. 2015).

## B. Plaintiff's Official Capacity Claims

Plaintiff's official capacity claims against all defendants must be dismissed for failure to state a claim. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." See White v. Jackson, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). See also Brewington v. Keener, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); Kelly v. City of Omaha, Neb., 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. Kelly, 813 F.3d at 1075.

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." McLean v. Gordon, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). See also Calzone v. Hawley, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). Moreover, in the

absence of a waiver, the Eleventh Amendment[1] bars suit against a state official acting in his or her official capacity. Morstad v. Dep't of Corr. & Rehab., 147 F.3d 741, 744 (8th Cir. 1998).

Here, plaintiff alleges that defendants are all employed by the Missouri Department of Corrections.  Doc. 16 at 2-5. The Missouri Department of Corrections is a state agency of the State of Missouri. As noted above, official capacity claims against an individual are really claims against that individual's employer. In this case, the employer is the State of Missouri. Thus, plaintiff's official capacity claims are barred because a state is not a "person" for purposes of §1983, and because the Eleventh Amendment bars suits against state officials acting in their official capacities.

Even if plaintiff's claims were not barred for the reasons set forth above, he has still failed to allege any facts to support official-capacity liability against defendants. A governmental entity can be sued directly under § 1983. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). In order for § 1983 liability to attach to a governmental entity in an official capacity suit, the plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. See Mick v. Raines, 883 F.3d 1075, 1089 (8th Cir. 2018). See also Marsh v. Phelps Cty., 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can potentially establish liability in an official capacity suit.

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the…official who has final authority regarding such matters." Corwin v. City of Independence, Mo., 829 F.3d 695, 700 (8th Cir. 2016). See also Russell v. Hennepin Cty., 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. Szabla v. City of Brooklyn, Minn., 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." Id. at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

Johnson v. Douglas Cty. Med. Dep't, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert the liability of a governmental entity by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." <u>S.M. v. Lincoln Cty.</u>, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff has not presented allegations regarding any of the three methods for establishing the liability of a governmental entity. Specifically, his facts do not mention any correctional policy or custom, and he does not suggest that there has been a deliberately indifferent failure to train employees. Indeed, the facts he has presented are in the nature of individual capacity, rather than official capacity claims. <u>See</u> <u>Nix v. Norman</u>, 879 F.2d 429, 431 (8th Cir. 1989) (stating that individual capacity suits generally "involve actions taken by governmental agents outside the scope of their official duties," while official capacity suits involve either allegedly unconstitutional policies or actions taken by a governmental agent who possess final authority over a particular decision). As such, his official capacity claims must be dismissed. <u>See</u> <u>Ulrich v. Pope Cty.</u>, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of <u>Monell</u> claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

For the reasons discussed above, plaintiff's official capacity claims against all defendants must be dismissed for failure to state a claim.

**C. Individual Capacity Claims Against Warden Lewis and Assistant Warden Reed**

Plaintiff's individual capacity claims against Warden Lewis and Assistant Warden Reed must be dismissed for failure to state a claim. Vicarious liability is inapplicable to § 1983 suits. <u>Marsh</u>, 902 F.3d at 754. Rather, in a § 1983 case, liability is personal. <u>Frederick v. Motsinger</u>, 873 F.3d 641, 646 (8th Cir. 2017). As such, "[g]overnment officials are personally liable only for

their own misconduct." <u>S.M. v. Krigbaum</u>, 808 F.3d 335, 340 (8th Cir. 2015). Furthermore, liability "requires a causal link to, and direct responsibility for, the alleged deprivation of rights." <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990). <u>See also</u> <u>Kohl v. Casson</u>, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights).

Plaintiff does not allege that either Warden Lewis or Assistant Warden Reed directly violated his constitutional rights. There is no indication whatsoever that they were personally responsible for allegedly denying plaintiff his access to the courts or interfering with his attempts to utilize the grievance procedure. He also does not allege any facts to indicate that Warden Lewis or Assistant Warden Reed failed to train their subordinates, such as would support supervisory liability. <u>See</u> <u>Parrish v. Ball</u>, 594 F.3d 993, 1001 (8th Cir. 2010) (stating that "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation").

Rather, plaintiff is attempting to demonstrate the liability of Warden Lewis and Assistant Warden Reed by relying on their respective positions of authority. However, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." <u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995). Moreover, plaintiff cannot hold Warden Lewis and Assistant Warden Reed liable solely for the acts of their subordinates. <u>See</u> <u>Rogers v. King</u>, 885 F.3d 1118, 1122 (8th Cir. 2018) (stating that government officials cannot be held liable for unconstitutional conduct under a theory of respondeat superior).

Plaintiff tries to circumvent the personal responsibility requirement by alleging that he placed Warden Lewis and Assistant Warden Reed on notice by sending each of them two kites. However, plaintiff has not demonstrated that the failure to respond to his kites amounted to a constitutional violation in and of itself. That is, he fails to establish that his kites contained constitutional violations, thereby giving Lewis' and Reed's failure to respond a constitutional dimension.

As to Warden Lewis, plaintiff states that he sent kites regarding his inmate account statement; his inability to obtain IRR forms; his placement in administrative segregation; and his inability to declare enemies at other facilities. None of these complaints state a constitutional claim.

First, with regards to not receiving an inmate account statement in the instant case, plaintiff has failed to establish that he was prejudiced. That is, he has not shown that his case was dismissed or in any way harmed by the delay in receiving the statement. See Kind v. Frank, 329 F.3d 979, 981 (8th Cir. 2003) ("Actual injury or prejudice must be proven to prevail on an access-to-courts claim"). Likewise, plaintiff's complaint that he was not receiving IRR forms does not state a constitutional claim, because a prison's grievance procedure does not confer a substantive right on an inmate. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). Next, his brief reference to being placed in administrative segregation, even though he states he has no enemies, fails to establish an atypical and significant hardship claim. See Rahman X v. Morgan, 300 F.3d 970, 973 (8th Cir. 2002) (stating that in order to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life"). Finally, his complaint about not being able to name enemies at other

facilities does not establish a "deliberate or callous indifference" to his safety to support a failure to protect claim. See Patterson v. Kelley, 902 F.3d 845, 851 (8th Cir. 2018).

As to Assistant Warden Reed, plaintiff's chief complaint is that her failure to respond to his kites caused him to lose the ability to bring forth a non-frivolous claim in a post-conviction motion. However, plaintiff has failed to establish that Assistant Warden Reed's inaction prejudiced him. As laid out in the complaint, plaintiff sent kites to Reed on August 5, 2018 and September 24, 2018. Both of these kites came *after* plaintiff alleges he received a letter from his attorney on April 20, 2018, advising him that a post-conviction claim he wished to raise was untimely. In other words, by the time he sent the kites, he had already suffered his purported harm. Furthermore, there is nothing else in the complaint to indicate why his inability to access special legal request forms or be granted indigent offender status affected his post-conviction litigation. With regard to his complaint that he was not receiving IRR forms, a prison grievance procedure is a procedural right only, and does not confer upon plaintiff a substantive right. See Buckley, 997 F.2d at 495.

Since plaintiff's underlying complaints, contained in his kites to Warden Lewis and Assistant Warden Reed, do not amount to constitutional violations, the failure by Lewis and Reed to respond likewise do not constitute a violation of plaintiff's constitutional rights. Therefore, plaintiff's individual capacity claims against Warden Lewis and Assistant Warden Reed must be dismissed.

### D. Individual Capacity Claims Against FUM Hannebrink

Plaintiff's individual capacity claims against FUM Hannebrink must be dismissed for failure to state a claim. In his complaint, plaintiff does not allege that FUM Hannebrink did anything to him directly. Rather, as with Warden Lewis and Assistant Warden Reed, he is

accused of failing to respond to two complaints contained in kites sent to Hannebrink by plaintiff. Neither of these kites contained allegations of conduct depriving him of a constitutionally-protected federal right.

First, plaintiff states that informed FUM Hannebrink that his subordinates had not given him a copy of his inmate account statement, in order to file the instant case. As discussed above, plaintiff does not indicate how this prejudiced him. See Kind, 329 F.3d at 981 ("Actual injury or prejudice must be proven to prevail on an access-to-courts claim"). There is no indication that his inability to obtain a copy of his inmate account statement caused his case to be dismissed or otherwise disadvantaged his litigation.

Next, plaintiff accuses FUM Hannebrink of not responding to his request for the signature receipt from the April 20, 2018 delivery of his legal mail. Again, plaintiff does not establish how the late delivery of this legal mail prejudiced him, much less that his inability to get the signature receipt for use as "evidence" implicates his constitutional rights. Plaintiff's own allegations state that it was too late to raise his "nonfrivolous, arguable claim of an ambiguity in his prison sentence" by the time his attorney sent the letter at issue. He does not state how receiving this news fifteen days after the postmark affected this claim.

Finally, plaintiff states that FUM Hannebrink's failure to help or remedy his complaints was a retaliatory action, because Hannebrink is named as a defendant in the instant case. Plaintiff fails, however, to provide any facts establishing a prima facie case for retaliation under either the First Amendment or Eighth Amendment. See Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004) (stating that a First Amendment retaliation claim must include allegations that plaintiff engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against plaintiff that would chill a person of ordinary firmness from engaging in

that activity); <u>Meuir v. Greene Cty. Jail Emps.</u>, 487 F.3d 1115, 1119 (8th Cir. 2007) (stating that an Eighth Amendment "case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline"). Instead, plaintiff presents his retaliation claim as a conclusion, without any corresponding factual support. <u>See</u> <u>Neubauer v. FedEx Corp.</u>, 849 F.3d 400, 404 (8th Cir. 2017) (stating that a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"). For these reasons, plaintiff's individual capacity claims against FUM Hannebrink must be dismissed.

### E.  Individual Capacity Claims Against CCM Cossey

Plaintiff's individual capacity claims against CCM Cossey must be dismissed for failure to state a claim. The United States Supreme Court has stated that it is "established beyond doubt that prisoners have a constitutional right of access to the courts." <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977). This right requires that prisons provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996).

Typically, access to courts claims result from deficiencies in a prison's legal assistance program or law library that hinders an inmate's ability to bring a claim. <u>Williams v. Hobbs</u>, 658 F.3d 842, 852 (8th Cir. 2011). However, "the due process clause is not meant to enable the prisoner to discover grievances, and to litigate effectively once in court." <u>Id.</u>

> To prove a violation of the right of meaningful access to the courts, a prisoner must establish [that] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.

Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008). In order to prove actual injury, the plaintiff must demonstrate that a non-frivolous legal claim has been frustrated or is being impeded. White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007). For example, an inmate may show that a complaint that he prepared was dismissed due to a technical requirement that a law library's inadequacies prevented him from knowing, or that a library was so inadequate that it prevented him from filing a complaint for actionable harm at all. Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996).

Plaintiff alleges that CCM Cossey violated his right of access to the courts by refusing to approve him for a qualified legal claim. He asserts that this kept him from accessing materials from the law library and to purchase extra writing materials and postage. He states that this prevented him from working on his post-conviction relief claim in Shattuck-Knaebel v. State of Missouri, No. 16MG-CC00035.

Plaintiff's access to courts claim fails because he has not alleged that he was actually injured. While he lists the obstacles he supposedly faced with regard to his post-conviction case, such as having to choose between hygiene products and required legal materials, he does not articulate how these obstacles hindered or impeded his case. Clearly, he has not been kept from filing his post-conviction action. Rather, the Court notes that plaintiff's state-court post-conviction case is still ongoing and has not been ruled on by the Circuit Court of Morgan County, Missouri. What is more, plaintiff has an attorney in his state-court post-conviction case to file things on his behalf and to undertake legal research. Indeed, because he is represented by counsel, plaintiff has no right to file motions in his case. See State of Missouri v. Hurt, 931 S.W.2d 213, 214 (Mo. App. 1996) (stating that defendant had "no right to proceed pro se while represented by counsel"); State of Missouri v. Harris, 669 S.W.2d 579, 582 (Mo. App. 1984)

(stating that "a defendant has no right to proceed both pro se and through counsel"). In light of this, plaintiff's vague assertions that he has not had meaningful access to the courts are insufficient to state a claim.

In his allegations against CCM Cossey, plaintiff further states that he was assaulted by an inmate, who told him that plaintiff had "better stop filing all these complaints against classification." Doc. 16 at 28. Without any supporting facts, plaintiff states that he "assumed the…inmate was talking about complaints he had filed against…[CCM] Cossey and…[CCM] Carter]." Id. To the extent that this can be read as a failure to protect claim, plaintiff has not alleged sufficient facts. See Lenz v. Wade, 490 F.3d 991, 995 (8th Cir. 2007) (stating that a prison official cannot be liable for denying an inmate humane conditions of confinement unless he knows of and disregards an excessive risk to the inmate's safety). To the extent that plaintiff is accusing CCM Cossey of directing an inmate to attack him in retaliation for filing complaints, plaintiff does not allege the necessary facts to state a such a claim. Plaintiff does not allege CCM Cossey directed the attack, only that plaintiff "assumed" it was related to complaints he had filed. This is nothing more than baseless speculation, without any factual support. See Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

For these reasons, plaintiff's individual capacity claims against CCM Cossey must be dismissed.

### F. Individual Capacity Claims Against CCM Carter

Plaintiff's individual capacity claims against CCM Carter must be dismissed for failure to state a claim. Plaintiff alleges that on April 20, 2018, CCM Carter presented him with a

signature form to confirm the receipt of legal mail. He notes that when he received the letter, he saw that it was postmarked April 5, 2018. Based on the postmark, he concludes that CCM Carter held onto the legal mail for fifteen days. Inside the legal mail, plaintiff states, was correspondence from his attorney, in which his attorney advised him that the deadline to raise a certain post-conviction claim had already expired.

As discussed previously, these facts fail to allege an access to courts claim, because plaintiff has not demonstrated how this incident prejudiced him or his case. See Klinger v. Dep't of Corrs., 107 F.3d 609, 617 (8th Cir. 1997) (stating "that actual injury must be proven in order to prevail on an access-to-courts claim"). By plaintiff's own recitation, the deadline for his claim had already passed at the time his attorney wrote him the letter. Even accepting as true that CCM Carter held on to the legal mail for over two weeks, plaintiff does not show how this harmed him or affected a claim he admits was already barred.

Plaintiff also accuses CCM Carter of hindering the grievance process. However, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003). As such, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. Buckley, 997 F.2d at 495. Therefore, plaintiff's grievance-related complaints do not state a constitutional claim. For these reasons, plaintiff's individual capacity claims against CCM Carter must be dismissed.

### G. Individual Capacity Claims Against CCM Samples

Plaintiff's individual capacity claims against CCM Samples must be dismissed for failure to state a claim. His allegation that CCM Samples failed to respond to kites regarding his inability to get a copy of his inmate account statement fails, because he has not demonstrated

how this prejudiced his legal case. His allegation that CCM Samples ignored his request to get his legal work from property in order to pursue his post-conviction claim also fails for lack of prejudice. Plaintiff has a post-conviction attorney and his claim is ongoing. He neglects to state why his inability to access certain legal materials has had a detrimental effect on his case, or has impeded his ability to seek relief. See White, 494 F.3d at 680 (stating that in order to prove actual injury, the plaintiff must demonstrate that a non-frivolous legal claim has been frustrated or is being impeded). For these reasons, plaintiff's individual capacity claims against CCM Samples must be dismissed.

### H.  Individual Capacity Claims Against CCM Price

Plaintiff's individual capacity claims against CCM Price must be dismissed for failure to state a claim.  First, plaintiff's contention that CCM Price failed to help him obtain a copy of his inmate account statement in the instant case fails, because he has not demonstrated how this actually injured him. See Kind, 329 F.3d at 981 (stating that access to courts claim requires actual injury or prejudice). Next, his allegation that CCM Price did not give him IRR forms fails because a prison's grievance procedure is not a substantive right. Finally, plaintiff's allegation that CCM Price did not respond to his request to be listed as an indigent offender fails due to a lack of prejudice. Plaintiff has been able to file his post-conviction case, this case is ongoing, and he has access to an attorney. In light of this, his bare assertion that he has not been listed as an indigent offender is not sufficient to demonstrate that his access to the courts has been impeded or his case frustrated. See Johnson v. Precythe, 901 F.3d 973, 977 (8th Cir. 2018) (stating that a "pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). For these reasons, plaintiff's individual capacity claims against CCM Price must be dismissed.

## I. Individual Capacity Claims Against CCM Peters

Plaintiff's individual capacity claims against CCM Peters must be dismissed for failure to state a claim. First, his allegation that CCM Peters ignored his concerns about not receiving his inmate account statement does not state the necessary prejudice to support an access to courts claim. He does not indicate, for instance, that this caused his case to be dismissed.

Next, his allegation that CCM Peters ignored his requests for certain forms is also unavailing. With regard to the request for special unit legal request forms, plaintiff does not demonstrate how his inability to access these forms "hindered his efforts to pursue a legal claim." See Entzi v. Redmann, 485 F.3d 998, 1005 (8th Cir. 2007). Furthermore, his assertion that CCM Peters interfered with his ability to pursue grievances fails because the grievance procedure is not a substantive right.  See Buckley, 997 F.2d at 495 (stating that a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right); Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and Fallon v. Coulson, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights"). For these reasons, plaintiff's individual capacity claims against CCM Peters must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim subject to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel is **DENIED as moot.**  [Doc. 17.]

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

A separate order of dismissal will be entered herewith.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this ___6th___ day of March, 2019.